The **WESTERN AND SOUTHERN LIFE INSURANCE COMPANY**, Petitioner

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW**, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 13, 2006.
Decided Dec. 18, 2006.

P. J. Murray, III, Pittsburgh, for petitioner.

Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

Gregory R. Noonan, Norristown, for intervenor, Thomas J. Carl.

BEFORE: SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The Western and Southern Life Insurance Company (Employer) petitions for review of the order of the Unemployment Compensation Board of Review (Board) that reversed the decision of the referee and granted benefits to Thomas J. Carl (Claimant) because he was not ineligible for benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1] Employer's statement of questions includes whether Claimant was subjected to racial and ethnic slurs and profanities at the same time that he was subjected to physical threats; whether he made numerous requests for a transfer to a different office during the first quarter of 2005; whether the Board shifted the burden to Employer to prove that Claimant was made aware that removal of the alleged harasser from Claimant's worksite was permanent or in response to his complaints of a hostile work environment; whether Claimant was aware that the transfer was in response to his complaints; and whether he proved cause of a necessitous and compelling nature for quitting.

Claimant was hired October 4, 2004 as a sales representative and was promoted to sales manager one month later. In September 2005 he returned to a sales representative job and remained there until he quit effective February 4, 2006. The UC Service Center granted benefits, but on appeal the referee reversed after determining that Claimant failed to show that he acted with common sense in voluntarily quitting his job and that he made a reasonable effort to preserve his job. Claimant and three co-workers testified at the hearing. On further review, the Board reversed the referee and made the following findings of fact:

2. On or about the first quarter of 2005, as a result of the claimant's filing a police report and notifying the employer's Field Human Resources Manager (FHRM) of same regarding coworker, Mr. Latteri's threatening the life of the claimant and his family, Latteri was terminated from his employment.

3. Thereafter, from on or about March 2005, the employer's District Sales Manager (DSM) Mr. Pezeshkian (Pezeshkian) told the claimant's coworker, Mr. Dezzi he felt the claimant was a threat to his, Pezeshkian's, position.

4. At the same time, the claimant was subjected to racial and ethnic slurs and profanities about himself and coworkers by Pezeshkian who, at one point, had the claimant's coworker, Mr. Federico, threaten the claimant in an attempt to unravel the claimant's nerves.

5. At some point in the first quarter of 2005, the claimant began making numerous contacts with the employer's Vice President, Mr. Reeves, (Reeves) requesting a transfer to the employer's Washington, DC or Wilkes Barre, Pa. office because of continuous harassment and threats on his life by Pezeshkian; however, without explanation, the claimant's request was denied.

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) provides that an employee will be ineligible for benefits for any week in which his or her unemployment is due to "voluntarily leaving work without cause of a necessitous and compelling nature...."

6. The claimant did not attempt to resolve his issues through the employer's President and/or FHRM because Pezeshkian identified them as his good buddies who would not assist the claimant.

7. Because he did not receive his requested transfer, by letter dated January 27, 2006 given to the employer's District Manager (DM), Mr. Busby, the claimant voluntarily resigned his position with the employer effective February 4, 2006 as a result of his hostile work environment and threats to his life by co-workers Latteri and Federico and by his DSM Pezeshkian.

8. As a result of the claimant's letter, on or about January 27, 2006, the employer's Senior Paralegal, Ms. Saenz, (Saenz) and another staff person met with the claimant and other agents to investigate the claimant's issues.

9. Prior to the claimant's voluntarily quitting his employment, but after the claimant submitted his resignation, Pezeshkian was removed from the claimant's worksite and was given a pay raise.

10. The claimant was not made aware that the transfer was permanent or that it was in response to the claimant's complaints.

11. Effective February 4, 2006, the claimant voluntarily quit his employment as a result of the employer's hostile work environment and threats against his life.

Board Opinion, pp. 1–2. The Board resolved the conflicts in the testimony in relevant part in Claimant's favor and found him to be credible. The Board noted that Employer presented no evidence on the merits and concluded that Claimant met his burden of proof. Among other things, he was subjected to intolerable working conditions, Employer failed to respond to his complaints and he had good cause for quitting his job.

 In unemployment cases under Section 402(b) of the Law, the claimant must prove cause of a necessitous and compelling nature that motivated the claimant to quit his or her job.[2] *See Fitzgerald v. Unemployment Compensation Board of Review,* 714 A.2d 1126 (Pa. Cmwlth.1998). A claimant must establish that "1) circumstances existed which produced real and substantial pressure to terminate employment; 2) like circumstances would compel a reasonable person to act in the same manner; 3) [the claimant] acted with ordinary common sense; and 4) [the claimant] made a reasonable effort to preserve [his] employment." *Id.* at 1129. Whether a claimant had cause of a necessitous and compelling nature to quit is a

2. The Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of the Board was not followed or whether the findings of fact are supported by substantial evidence in the record. *Select Security, Inc. v. Workers' Compensation Appeal Board (Kobrin),* 901 A.2d 1129 (Pa.Cmwlth.2006); *Orend v. Unemployment Compensation Board of Review,* 821 A.2d 659 (Pa.Cmwlth.2003). Substantial evidence is defined as "such relevant evidence which a reasonable mind would accept as

adequate to support a conclusion." *Guthrie v. Unemployment Compensation Board of Review,* 738 A.2d 518, 521 (Pa.Cmwlth.1999). The Board is the ultimate fact finder and has the authority to resolve evidentiary conflicts and to make all necessary credibility determinations. *Id.* The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings. *Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977).

question of law reviewable by the Court. *Id.*

Employer argues that Finding of Fact No. 4 is not supported by substantial evidence because the record contains no evidence as to the time period during which Claimant allegedly was subjected to racial and ethnic slurs or subjected to profanities by the District Sales Manager Parvis Pezeshkian. It asserts that Claimant only discussed dates in the first quarter of 2005 related to the threats from Nick Latteri, another employee, and it suggests that the term "hostile work environment" refers to threats and does not encompass any racial or ethnic slurs or profanities allegedly uttered by Pezeshkian. The Board responds that a plethora of evidence exists in the record to support its finding that Claimant was subjected to racial and ethnic slurs and profanities about himself and his co-workers "from on or about March 2005," *see* Finding of Fact No. 3. One may reasonably infer that such conduct occurred from March 2005 onward based, for example, on testimony that Pezeshkian *continued* to threaten Claimant daily after Latteri was fired April 1.

■ In addition, Claimant was subjected to Pezeshkian's references to Black agents using the "n" word, references to Italian agents using the "wop" word and other ethnically derogatory terms and references to other agents using various profane terms. Claimant testified that Pezeshkian called agents on Claimant's staff "mother f——ers," and Randolph Dezii testified that he witnessed Pezeshkian's calling Claimant a "mother f——ing rat" and a "p-g s——t Irishman." The testimony supports the finding that Claimant was subjected to racial and ethnic slurs and to profanities by Pezeshkian. The Court agrees with the Board that, even though the dates on which Pezeshkian uttered his slurs and profanities were not shown precisely, the record contains substantial evidence to support the finding that such conduct occurred at the same time (from on or about March 2005) that Pezeshkian told Claimant's co-worker that Claimant was a threat to Pezeshkian's position.

■ Employer next argues that Finding of Fact No. 5, regarding Claimant's requests for a transfer, is not supported by substantial evidence and is contradicted by Claimant's testimony that the only relief that he sought in the first quarter of 2005 was for Employer to discharge Latteri. The Board submits that ample evidence exists to support this finding by virtue of Claimant's credited testimony that he contacted Steven Reeves, the Vice President, to request a transfer to the Washington or Wilkes–Barre office or to another office within the United States to get away from Pezeshkian; that Reeves denied the requests without explanation; and that Claimant initiated contacts with Reeves to request transfer around the first quarter of 2005. The Board reasonably inferred that the contacts began at that time because they coincided with the period during which Pezeshkian began his threats. In the alternative, the contacts occurred shortly after Latteri's discharge on April 1, 2005, and at a minimum Reeves knew about Pezeshkian's conduct no later than November 8, 2005 when Reeves received Claimant's written communication, but no action was taken prior to his January 27, 2006 resignation. Finding of Fact No. 5 is supported by substantial evidence, and any lack of specific dates on which Claimant first began his requests for a transfer does not render the finding invalid.

As for the burden of proof, Employer claims that the Board committed an error of law when it required Employer to prove that Pezeshkian's removal from Claimant's worksite was permanent or that it was in response to his complaints. Employer

maintains that the Board erred when it found that Claimant was not made aware that the transfer was permanent or in response to the complaints and that the Board erred when it stated that Employer offered no testimony with regard to the merits of the case. Citing *Johnson v. Unemployment Compensation Board of Review*, 869 A.2d 1095 (Pa.Cmwlth.), *appeal denied sub nom. Huntzinger v. Unemployment Compensation Board of Review*, 585 Pa. 699, 889 A.2d 90 (2005), among other cases, Employer submits that Claimant had the burden of proving that his voluntary termination was for cause of a necessitous and compelling nature under Section 402(b) of the Law and that Employer had no burden to prove anything whatsoever. Employer also argues that Finding of Fact No. 10 is not supported by substantial evidence inasmuch as Claimant admitted during cross-examination that he was aware of Employer's removal of Pezeshkian as a result of the investigation into Claimant's complaints and that Pezeshkian was transferred prior to Claimant's quitting. Employer relies upon the following exchange:

EL And as a result of [the January 27, 2006] investigation, did Western & Southern take some action concerning Mr. [Pezeshkian]?

C What action did you take? You ...

R No, no, no. You can't ask, you can't ask her questions about ... This is her cross-examination.

C I don't know what, I don't know what she's, I don't know what they did to him. They moved him. They, well, let me tell you what, they moved him and he told me he got a pay raise.

EL My question was, did Western & Southern take some action regarding Mr. [Pezeshkian]? Was he transferred or moved from that office prior to your quitting your job?

C I gave notice the same week.

R Yes or no, Sir?

C I guess it's yes.

N.T., pp. 36–37.

■ The Board emphasizes Claimant's testimony upon cross-examination that he was unaware of what actions Employer took in response to the complaints and that although Pezeshkian had been moved from the worksite he stated that he had been given a raise. In connection with the statement that Employer offered no testimony on the merits, the Board explains that it was intended merely to show that Claimant's credited testimony was unchallenged and that its finding that Claimant was not aware that Pezeshkian's transfer was permanent or made in response to Claimant's complaints was intended to show his lack of awareness of what actions Employer took to alleviate Claimant's complaints prior to his quitting. Because Claimant did not testify that at the time of his resignation he had been notified that Pezeshkian's transfer was permanent or that it was made in response to the complaints, the Court agrees with the Board that the record supports Finding of Fact No. 10. Moreover, the Board clearly did not shift the burden to Employer.

Employer's final argument is that the Board committed an error of law in concluding that Claimant proved that he quit his job for a "necessitous and compelling reason" in accordance with the requirements of Section 402(b) of the Law. Employer's position is that Claimant failed to show that he made a good faith effort to avoid quitting his job or, in essence, that he acted with ordinary common sense and made a reasonable effort to maintain his employment relationship. Similarly, it contends that Claimant failed to meet his burden because Employer resolved the

problem by removing Pezeshkian from the worksite before Claimant quit. Employer relies on *Oller v. Unemployment Compensation Board of Review,* 57 Pa.Cmwlth. 459, 426 A.2d 741 (1981), *Gioia v. Unemployment Compensation Board of Review,* 661 A.2d 34 (Pa.Cmwlth.1995), and *Craighead–Jenkins v. Unemployment Compensation Board of Review,* 796 A.2d 1031 (Pa.Cmwlth.2002), among other cases.

In *Oller* the claimant had complained to her employer about the work performance of a subordinate employee and requested that she be discharged. The employer refused, and the claimant resigned even though continuing work was available to her. The denial of benefits was affirmed because the claimant failed to act reasonably to maintain her employment relationship; she refused to meet with the employer and the subordinate to address her concerns. In *Gioia* the claimant's relationship with his supervisor deteriorated due to what the claimant perceived as unjust criticism of his job performance. After a requested transfer was denied and a subsequent meeting was held with the employer to discuss matters, the claimant resigned because he felt that there was no satisfactory resolution. The employer, however, suggested another meeting but the claimant refused although continuing work was available. The Court upheld the denial of benefits because the claimant failed to show a necessitous and compelling reason for quitting. In *Craighead–Jenkins* a conflict arose between the claimant and the employer's board secretary. The employer resolved the matter in the claimant's favor, and in an unrelated matter the secretary continued to interfere with the claimant's job duties. Despite the employer's efforts, the claimant resigned in response to a written memorandum from the secretary that the claimant perceived to be an attack upon her personally. The employer requested her to stay and expressed its commitment to solving the problem. In affirming the Board's denial of benefits, the Court stated that good cause requires an employee to continue working unless and until an employer's action proves to be ineffectual where it has promised to alleviate a problem.

Referring to *Porco v. Unemployment Compensation Board of Review,* 828 A.2d 426 (Pa.Cmwlth.2003), and *Willet v. Unemployment Compensation Board of Review,* 59 Pa.Cmwlth. 500, 429 A.2d 1282 (1981), the Board reiterates that profanity in the workplace, abusive conduct and unjust accusation give rise to a hostile work environment that may provide cause of a necessitous and compelling nature to quit, although a claimant must act in a common sense manner to eliminate the problem so as to avoid quitting. In *Porco* the claimant was subjected to abusive conduct and profanity from his sales manager but did not contact upper level management to complain, thereby failing to exhaust all possible alternatives before he quit. He was denied benefits. In *Willet* the claimant was subjected to profanity, ridicule of her physical appearance and insults to her intelligence over a four-month period by her supervisor. The Court concluded that the claimant's resignation was consistent with ordinary common sense due to the conditions.

■ In *Oller, Gioia* and *Craighead–Jenkins* the claimants made no good faith effort to preserve their employment after receiving notice that their employers were committed to resolving the work problems, contrary to the circumstances in the case *sub judice.* Employer's reliance upon those cases to support its arguments that Claimant is ineligible for benefits therefore

is misplaced.[3] The testimony unequivocally supports the Board's finding that Claimant quit his job due to a hostile work environment and threats against his life from co-workers and from Pezeshkian, which constitute cause of a necessitous and compelling nature to quit one's job. After its review, the Court is convinced that the Board's findings support the conclusion that Claimant reasonably attempted to resolve his complaints and that when his efforts were rejected he had good cause to quit. *See Mercy Hospital of Pittsburgh v. Unemployment Compensation Board of Review*, 654 A.2d 264 (Pa.Cmwlth.1995) (holding that co-worker harassment may constitute good cause to quit where claimant notifies his or her supervisor of the conduct). Because the findings are supported by substantial evidence and the Board committed no error of law in granting benefits under Section 402(b) of the Law, the Court affirms.

### ORDER

AND NOW, this 18th day of December, 2006, the Court affirms the order of the Unemployment Compensation Board of Review.

**3.** Claimant was permitted to intervene by order dated October 31, 2006. Claimant recites pertinent parts of the testimony and counters Employer's arguments by asserting that the record supports the Board's findings, that the record clearly establishes that many requests were made for a transfer during the first quarter of 2005, that the record shows that Claimant was not actually aware of Employer's remedial action until the hearing and that the Board did not shift the burden of proof to Employer.