# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Murphy Marine Services, Inc.,     :
                                    :
                Petitioner     :
                                    :
              v.             :   No. 2231 C.D. 2013
                                    :
Unemployment Compensation   :   Submitted: May 16, 2014
Board of Review,               :
                                    :
                Respondent   :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE MARY HANNAH LEAVITT, Judge
                 HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**             **FILED: August 4, 2014**

     Murphy Marine Services, Inc. (Employer) petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board) granting UC benefits to Joseph P. Dobbins, Jr. (Claimant). The Board determined that Employer did not make an offer of employment to Claimant or show that Claimant refused an offer of suitable work; therefore, Claimant was not ineligible for UC benefits pursuant to Section 402(a) of the UC Law.[1] On appeal, Employer argues

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(a). Section 402(a) provides that "[a]n employe shall be ineligible for compensation for any week:"

*(Continued…)*

that the Board erred by not applying Sections 401(d)(1)[2] or 402(b)[3] of the UC Law to find Claimant ineligible for UC benefits pursuant to these sections. Employer argues that the record shows that Claimant demonstrated an unwillingness to work and that he voluntarily chose not to work.

The factual background of this controversy is rather unusual. Employer is located in Wilmington, Delaware and is one of five employers that are members of the Delaware River Marine Trade Association also known as PMTA. (Hr'g Tr. at 7, R.R. at 75a; Employer's Petition for Appeal, Ex. A, R.R. at 29a.) The employer members of PMTA hire union labor either through Local 1291 of the AFL-CIO

---

> (a) In which his unemployment is due to failure, without good cause, either to apply for suitable work at such time and in such manner as the department may prescribe, or to accept suitable work when offered to him by the employment officer or by any employer, irrespective of whether or not such work is in "employment" as defined in this act: Provided, That such employer notifies the employment office of such offer within seven (7) days after the making thereof; however[,] this subsection shall not cause a disqualification of a waiting week or benefits under the following circumstances: when work is offered by his employer and he is not required to accept the offer pursuant to the terms of the labor-management contract or agreement, or pursuant to an established employer plan, program or policy: Provided further, That a claimant shall not be disqualified for refusing suitable work when he is in training approved under section 236(a)(1) of the Trade Act of 1974.

Id.

[2] 43 P.S. § 801(d)(1). Section 401(d)(1) provides, in relevant part, that an unemployed employee will be paid UC benefits if he "[i]s able and available for suitable work." Id.

[3] 43 P.S. § 802(b). Section 402(b) provides that an employee shall be ineligible for UC benefits "for any week . . . [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . . ." Id.

2

International Longshoremen's Association in Philadelphia, Pennsylvania or locals located in Wilmington, Delaware to work at ports in the Greater Philadelphia Area and the Delaware River areas of New Jersey. (Hr'g Tr. at 7, R.R. at 75a; Employer's Petition for Appeal, Ex. A, R.R. at 29a.) Employer hires union members who report to the union hall in Wilmington to be hired and to work in Wilmington, not Pennsylvania. (Hr'g Tr. at 7, R.R. at 75a.)

Claimant is employed as a longshoreman working out of Local 1291 in Philadelphia. (Board Decision, Findings of Fact (FOF) ¶ 2.) As a union member, Claimant may work for any of the five employers that are members of the PMTA. (Hr'g Tr. at 7, R.R. at 75a.) If work is not available in Philadelphia, Claimant may pick up jobs in Wilmington. (FOF ¶ 3.) Claimant first registers at the union hall in Philadelphia before registering at the union hall in Wilmington because members of the Wilmington local are given preference at the Wilmington union hall. (FOF ¶ 4.) After registering in Philadelphia, Claimant must drive thirty miles to reach the Wilmington union hall. (FOF ¶ 4.) Claimant registered for work with the Philadelphia union hall on May 7, 2013, but he was not hired. (FOF ¶ 5.)

Claimant filed a claim for UC benefits for the claim week ending May 11, 2013. The UC Service Center issued a determination finding that Claimant refused a job with Employer; however, because Employer did not notify the Office of UC Benefits of the Department of Labor and Industry (Department) of the job offer in writing within seven days of making the offer as required by Section 402(a) of the UC Law, Claimant was deemed eligible for benefits. (Notice of Determination, R.R. at 18a.)

Employer appealed the UC Service Center's determination. Employer contended that the UC Service Center incorrectly applied Section 402(a) of the UC Law because Claimant, and other workers like him, are hired on a day-to-day basis and, pursuant to the contract between PMTA and the locals, are not required to take the jobs. (Employer's Petition for Appeal from Determination, R.R. at 25a-26a.) Employer alleged further that forcing it to comply with the seven day notification requirement was impracticable due to the nature of the hiring process that involved hundreds of workers on a daily basis. (Employer's Petition for Appeal from Determination, R.R. at 26a.) Finally, Employer alleged that the correct provision of the UC Law was Section 402(b) because Claimant, essentially, voluntarily left his employment by not accepting the day-to-day employment offered pursuant to the contract. (Employer's Petition for Appeal from Determination, R.R. at 26a.)

A UC Referee subsequently held a hearing. Employer presented the testimony of Diane Woznicki (Secretary) and Claimant testified on his own behalf.

Secretary explained the union hiring process. The union workers call a phone number to obtain a list of the following day's work orders. (Hr'g Tr. at 5, R.R. at 73a.) If work is available, the union workers must report to the union hiring hall to be hired for that day; the union workers are then hired in a certain order according to union status. (Hr'g Tr. at 5, 7, R.R. at 73a, 75a.) Because Claimant is a basic member of Local 1291 of Philadelphia, he is expected to report to the local Philadelphia union hall first and, if no work is available, he "can come down to [the] Wilmington hiring center and get work if work is available." (Hr'g

4

Tr. at 7, R.R. at 75a.) As a basic union member, Claimant may "bump" out any secondary or casual member with less seniority and take any job offered to that less senior member. (Hr'g Tr. at 6, R.R. at 74a.) Claimant registered for work on May 7, 2013 in Philadelphia, but he was not hired. (Hr'g Tr. at 6, R.R. at 74a.) With regard to the Wilmington union hiring hall, the union members are hired in the following order: (1) basic members of Wilmington Local 1694; (2) basic members of Philadelphia Local 1291; (3) secondary members of Wilmington Local 1694; (4) secondary members of Philadelphia Local 1291; (5) registered casual members of Wilmington Local 1694; (6) registered casual members of Philadelphia Local 1291; and (7) unregistered casual members. (Hr'g Tr. at 7, R.R. at 75a.) On May 7, 2013, there were six casual workers hired by Employer from the Wilmington union hall. (Hr'g Tr. at 6, R.R. at 74a.)

With respect to Employer's failure to comply with the seven day notice requirement set forth in Section 402(a), Secretary testified that this provision would require Employer to send in a list, every day, of hundreds of union members who were offered work but chose not to accept the offer from Employer or who did not register for work that day. (Hr'g Tr. at 9, R.R. at 77a.) Employer asserted that 1400 union members are offered a variety of different positions each day that they are not required to accept. (Hr'g Tr. at 12-13, R.R. at 80a-81a.) Employer argued that placing the burden on Employer to provide notice for all 1400 union members who choose not to work or register for work on a given day is not tenable. (Hr'g Tr. at 13, R.R. at 81a.)

Claimant testified that he could not actually remember registering for work on May 7, 2013, but he probably went to his union hall in Philadelphia for work. (Hr'g Tr. at 11, R.R. at 79a.) Claimant explained that the Philadelphia union hall and the Wilmington union hall hire at the same times and that the chances of him being hired out of the Philadelphia union hall "are a million times better than . . . at an outside local union hall." (Hr'g Tr. at 11, R.R. at 79a.) Claimant testified that if he did not get work that day in Philadelphia it was not because he did not try. (Hr'g Tr. at 11, R.R. at 79a.) Claimant explained that the way the hiring works in Philadelphia is that there may be four hour jobs that the casuals take because Claimant and other senior union men are bidding on twenty-hour jobs. (Hr'g Tr. at 12, R.R. at 80a.) Therefore, Claimant testified he would not have refused a job but he may have missed a four hour "job just depending on the way the hire goes." (Hr'g Tr. at 12, R.R. at 80a.)

With respect to Claimant not appearing at the Wilmington union hall on May 7, 2013, Claimant testified that he is registered to work primarily out of Local 1291 of Philadelphia; therefore, he is not required to travel to Wilmington to work. (Hr'g Tr. at 10, R.R. at 78a.) Claimant testified that he is registered to work for Delaware River Stevedores[4] and that he has been working for that company for thirteen years. (Hr'g Tr. at 10, R.R. at 78a.) Claimant explained that, when Delaware River Stevedores lost a big account a few years ago, things slowed down

---

[4] The hearing transcript indicates that "Stevedores" was phonetically spelled and transcribed as "Steamboards," (Hr'g Tr. at 10, R.R. at 78a); however, Claimant's Claim Record indicates that Claimant was employed by Delaware River Stevedores. (Claim Record, R.R. at 3a.)

6

out of the Philadelphia union hall. (Hr'g Tr. at 10, R.R. at 78a.) As a result, Claimant began going to the Wilmington union hall to pick up some work; however, after a period of time, the Wilmington union hall began to discourage non-members from going there to work. (Hr'g Tr. at 10, R.R. 78a.) Claimant testified that members were put ahead of him and that he had gone home over a dozen times from the Wilmington union hall with no work. (Hr'g Tr. at 10, R.R. at 78a.) However, work did pick up again at the Philadelphia union hall; therefore, Claimant did not have to go all the way to Wilmington. (Hr'g Tr. at 10, R.R. at 78a.) Claimant testified further that he would have to travel thirty miles from the Philadelphia union hall to the Wilmington union hall if no work was available out of Philadelphia. (Hr'g Tr. at 10, R.R. at 78a.)

Claimant explained further why Employer is named as his separating employer for purposes of this UC claim. When Claimant received a statement from the UC authorities indicating his weekly benefit amount, he believed the amount was incorrect. (Hr'g Tr. at 12, R.R. at 80a.) Claimant testified that he knew he should be receiving the maximum amount permitted based upon his last year's wages. (Hr'g Tr. at 12, R.R. at 80a.) Claimant contacted the UC authorities, which informed him that he had wages from Employer in Delaware that could be added to his record. (Hr'g Tr. at 12, R.R. at 80a.) It is for this reason that Employer is listed as Claimant's separating employer on his claim record.[5]

---

[5] We note that Employer stated in its appeal from the Notice of Determination that Claimant worked for other employer members of the PMTA, but not for Employer between April 14, 2013, the date Claimant filed his UC claim, and May 11, 2013, the end of the compensable week for which he was granted UC benefits; therefore, Employer stated that it was not Claimant's last separating employer. (Employer's Petition for Appeal from Determination,

*(Continued…)*

(Claim Record, R.R. at 3a.) Claimant again explained that he only started working in Wilmington when he could not find work in Philadelphia, where he has been working for thirteen years. (Hr'g Tr. at 12, R.R. at 80a.)

The UC Referee considered the circumstances surrounding Claimant's claim for UC benefits and found that Claimant did not refuse an offer of suitable work; therefore, benefits could not be denied pursuant to Section 402(a). (UC Referee's Decision at 2.) The UC Referee did not address whether Employer complied with the seven day notification provision set forth in Section 402(a) or whether Claimant was ineligible under any other provision of the UC Law. The UC Referee affirmed the UC Service Center's determination.

Employer appealed the UC Referee's Decision to the Board. Therein, Employer again alleged that Section 402(a) was not applicable. (Employer's Petition for Appeal from Referee's Decision, R.R. at 91a-93a.) Employer asserted that the UC Referee should have applied Section 401(d)(1) of the UC Law and found Claimant ineligible for UC benefits because his failure to report to the union hiring hall in Wilmington on May 7, 2013 showed that he was not able and willing to work. (Employer's Petition for Appeal from Referee's Decision, R.R. at 92a.) Employer also asserted again that the correct provision of the UC Law applicable to this matter was Section 402(b) and that forcing it to comply with the seven day notification requirement was impracticable. (Employer's Petition for Appeal from Referee's Decision, R.R. at 92a-93a.)

---

R.R. at 25a-26a.) We note further that it appears that Delaware River Stevedores is listed as Claimant's last separating employer on his claim record. (Claim Record, R.R. at 3a.)

8

Upon review, the Board found that Claimant did not refuse an offer of suitable work. (FOF ¶ 6.) The Board stated that an employer must make an offer of work to a claimant in order for the claimant to be disqualified from receiving UC benefits pursuant to Section 402(a). (Board Decision at 2.) The Board determined that here, "[t]here was no offer of work, merely an opportunity to be hired." (Board Decision at 2.) The Board found Claimant's testimony credible that he first tried to find work at the local Philadelphia union hall. (Board Decision at 2.) The Board determined further that, although Claimant had secured work through the Wilmington union hall in the past, the chances of securing work in Wilmington were slim because members of that union hall were given preference. (Board Decision at 2.) Thus, the Board concluded, Employer did not show that Claimant refused an offer of suitable work. (Board Decision at 2.) Accordingly, the Board concluded that Claimant was not ineligible pursuant to Section 402(a) and granted Claimant UC benefits. The Board neither addressed Employer's arguments that Claimant was ineligible for UC benefits pursuant to Sections 401(d)(1) and 402(b) of the UC Law nor addressed Employer's arguments regarding the seven day notice requirement set forth in Section 402(a). Employer now petitions this Court for review.[6]

---

[6] This Court's review of an order of the Board "is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of the Board was not followed or whether the findings of fact are supported by substantial evidence in the record." Western & Southern Life Insurance Co. v. Unemployment Compensation Board of Review, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006). "In determining whether substantial evidence exists, we view the record in the light most favorable to the party that prevailed before the Board, and give that party the benefit of all reasonable inferences that can be drawn from the evidence." Big Mountain Imaging v. Unemployment Compensation Board of Review, 48 A.3d 492, 494-95 (Pa. Cmwlth. 2012).

9

On appeal, Employer asserts that the Board erred by not finding Claimant ineligible pursuant to Sections 401(d)(1) and 402(b) of the Law. Employer argues that the Board's decision ignores the contractual terms by which Claimant was offered work. Employer contends that, because the contractual terms provide that Claimant is not required to accept any suitable work offered each day through the union halls, Section 402(a) is not applicable. See Section 402(a), 43 P.S. § 802(a) (providing that "this subsection shall not cause a disqualification of a waiting week or benefits under the following circumstances: when work is offered by his employer and he is not required to accept the offer pursuant to the terms of the labor-management contract or agreement"). Employer asserts that, because Claimant did not abide by the contractual terms and appear at the Wilmington union hall on May 7, 2013 to exercise his seniority rights, the Board should have deemed him ineligible under Sections 401(d)(1) and 402(b) of the Law. Employer contends that Claimant demonstrated an unwillingness to work by not appearing at the Wilmington union hall and that, as a day-to-day temporary employee, Claimant had an obligation to make a reasonable effort to preserve his employment.

As stated previously, although Employer raised these arguments before the Board, the Board did not address whether these sections of the UC Law were applicable. The Board did not consider the contractual terms of the agreement between the PMTA and the union members to determine whether Employer's contention is correct that Section 402(a) is not applicable. The Board only ruled on whether Claimant was ineligible for UC benefits pursuant to Section 402(a) of the UC Law. However, given the unusual nature of the contractual employment

arrangement between Employer and the union members, it is unclear to this Court which section of the UC Law is applicable here.

Pursuant to Section 402(a) of the UC Law, an employee is ineligible for compensation for any week "[i]n which his unemployment is due to failure, without good cause, either to apply for suitable work at such time and in such manner as the department may prescribe, or to accept suitable work when offered to him by the employment officer or by any employer." 43 P.S. § 802(a). Pursuant to Section 401(d)(1), a claimant will be paid UC benefits if he "[i]s able to work and available for suitable work." 43 P.S. § 801(d)(1). Pursuant to Section 402(b), a claimant is ineligible for UC benefits "for any week . . . [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . . ." 43 P.S. § 802(b). The claimant bears the burden of proving his or her eligibility under each of these sections. See Rising v. Unemployment Compensation Board of Review, 621 A.2d 1152, 1154 (Pa. Cmwlth. 1993) (holding that, pursuant to Section 402(a), the claimant bears the burden on both the suitability of the work and whether there is good cause not to accept suitable work when offered); Harwood v. Unemployment Compensation Board of Review, 531 A.2d 823, 825 (Pa. Cmwlth. 1987) (stating that under Section 401(d)(1), a claimant must show that he is able to do some type of work and that a reasonable opportunity for securing work exists); Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review, 906 A.2d 657, 660 (Pa. Cmwlth. 2006) (holding that a claimant has a burden to show, inter alia, that he made a reasonable effort to preserve his employment).

11

It appears from the record that some type of reciprocal contract exists between the PMTA and the local unions which sets forth terms and conditions of employment. Based on the testimony, it appears that union members who are not working are to call a phone number and, if there will be work, appear that day at their respective union hall in order to be hired for any available work. Employer contends that union members do not have to accept offered available work and that the union members are, therefore, day-to-day temporary employees; however, the provisions of the entire contract are not in the record and it is unclear exactly what type of employees they are. It also appears that union members who are without work are only required to report to the union halls and do not need to look for work, or accept work, from any employers other than the members of PMTA. This employment arrangement suggests that the union members are generally considered employed unless they do not report or do not register for work on a particular day, in which case either Section 401(d)(1) or Section 402(b) might be applicable to their claims. However, it is also possible that union members are considered generally unemployed, daily workers, who are only employed on the days they can find work, in which case Section 402(a) might be applicable to their claims. Finally, given this unusual employment arrangement, there is a question whether union members who work out of one hiring hall may be required to travel to another hiring hall for work on the days they are not hired in their local hall.

These and other unresolved ambiguities in the record raise questions regarding which section of the UC Law is applicable here when a union member, such as Claimant, makes a claim for UC benefits. Accordingly, we conclude that a

12

remand is necessary for the Board to resolve the ambiguities through additional fact finding and then apply the appropriate section of the UC Law.[7]

Accordingly, for the foregoing reasons, we vacate the Board's Order and remand this matter for the Board to determine which section or sections of the UC Law are applicable in light of the contractual employment agreement at issue and to determine Claimant's eligibility under whatever section or sections the Board deems applicable in this matter.

_____
**RENÉE COHN JUBELIRER, Judge**

Judge Brobson did not participate in the decision in this case.

---

[7] Additionally, we note that Employer argues that, given the large number of union workers that report to both union halls on a daily basis, it would be impractical to require Employer to provide notice of any employment offer within seven days to the Department as required by Section 402(a). It appears likely that requiring compliance with the notice requirement will force Employer to send a list of literally hundreds of names to the Department every single day. This Court has held that compliance with the notice provision of Section 402(a) is directory and not mandatory; therefore, compliance is not required when it would be inconsistent with the objectives of the UC Law and the claimant is not prejudiced by the delay. McKeesport Hospital v. Unemployment Compensation Board of Review, 619 A.2d 813, 815 (Pa. Cmwlth. 1992). As we explained, this Court "'cannot declare claimants to be eligible and grant them benefits merely as a result of rigid application of technical standards where, otherwise, said claimants are clearly ineligible.'" Id. (quoting Barillaro v. Unemployment Compensation Board of Review, 387 A.2d 1324, 1328 (Pa. Cmwlth. 1978)).

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Murphy Marine Services, Inc.,        :
                                          :

               Petitioner        :
                                          :

                  v.                 :     No. 2231 C.D. 2013
                                          :

Unemployment Compensation       :
Board of Review,                      :
                                          :

               Respondent     :

# **O R D E R**

**NOW**, August 4, 2014, the Order of the Unemployment Compensation Board of Review entered in the above-captioned matter is **VACATED** and this matter is **REMANDED** for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

 

                                    _____
                                    **RENÉE COHN JUBELIRER, Judge**