# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kenny Hope, | : | CASES CONSOLIDATED |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Unemployment Compensation | : | |
| Board of Review, | : | Nos. 1208-1221 C.D. 2022 |
| Respondent | : | Submitted: December 4, 2023 |


BEFORE: HONORABLE ANNE E. COVEY, Judge
HONORABLE STACY WALLACE, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION BY
JUDGE COVEY                                                  FILED: January 16, 2024

Kenny Hope (Claimant) petitions this Court, pro se, for review of the Unemployment Compensation (UC) Board of Review's (UCBR) September 2, 2022 orders[1] affirming the Referee's decisions denying Claimant UC benefits under Sections 402(h) and 4(*l*)(2)(B) of the UC Law (Law)[2] with a non-fault overpayment of UC benefits and a non-fraud overpayment of Federal Pandemic UC (FPUC) benefits.[3] Claimant presents two issues for this Court's review: (1) whether the

---

[1] Pa. Cmwlth. Nos. 1208-1221 C.D. 2022 involve a consolidated hearing before a Referee. The question of Claimant's eligibility for UC, Pennsylvania's Pandemic Emergency UC (PEUC), Federal Pandemic UC, and Lost Wages Assistance (LWA) benefits is the same given that eligibility for the federal benefits is dependent on Claimant exhausting state benefits. The overpayments flow directly from the eligibility determinations, and the appeals involve interlapping records and UCBR decisions.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 802(h) (relating to self-employment) and 753(*l*)(2)(B) (relating to the definition of self-employment).

[3] In UCBR docket numbers 2022003869-BR, 2022003870-BR, and 2022003871-BR, the UCBR found Claimant ineligible for UC benefits due to being self-employed under Sections 402(h) and 4(*l*)(2)(B) of the Law, effective March 28, 2021, with a non-fault overpayment of UC benefits and a non-fraud overpayment of FPUC benefits for weeks ending April 3, 2021 through

UCBR's findings of fact related to whether Claimant is self-employed are supported by substantial evidence; and (2) whether the UCBR's reasoning, including its reliance on *Starinieri v. Unemployment Compensation Board of Review*, 289 A.2d 726 (Pa. 1972), is correct in light of the full evidentiary record and recent case law, including *Lowman v. Unemployment Compensation Board of Review*, 235 A.3d 278 (Pa. 2020). After review, this Court affirms.

On January 15, 2019, Claimant created Kenny Hope Tax Consulting Services, LLC (LLC). Brenntag North America, Inc. (Brenntag) contracted with Claimant as an independent contractor to perform services under his LLC on January 15, 2020, which Claimant did until the contract expired on February 14, 2020. Before and after Brenntag retained Claimant, Claimant acquired other contracts for

June 5, 2021. Claimant filed Petitions for Review in this Court appealing from the UCBR's decisions, which were docketed at 1208 C.D. 2022, 1209 C.D. 2022, and 1210 C.D. 2022, respectively.

In UCBR docket numbers 2022003872-BR, 2022003873-BR, and 2022003874-BR, the UCBR found Claimant ineligible for PEUC benefits, with non-fraud overpayments of PEUC and FPUC for weeks ending March 20 and March 27, 2021. Claimant filed Petitions for Review in this Court appealing from the UCBR's decisions, which were docketed at 1211 C.D. 2022, 1212 C.D. 2022, and 1213 C.D. 2022, respectively.

In UCBR dockets numbers 2022003875-BR, 2022003876-BR, and 2022003877-BR, the UCBR found Claimant ineligible for PEUC benefits, with non-fraud overpayments of PEUC and FPUC for weeks ending February 20, 2021 through March 13, 2021. Claimant filed Petitions for Review in this Court appealing from the UCBR's decisions, which were docketed at 1214 C.D. 2022, 1215 C.D. 2022, and 1216 C.D. 2022, respectively.

In UCBR docket numbers 2022003878-BR, 2022003879-BR, 2022003880-BR, 2022003881-BR, and 2022003882-BR, the UCBR found Claimant ineligible for UC benefits due to being self-employed under Sections 402(h) and 4(*l*)(2)(B) of the Law, effective March 29, 2020, with a non-fault overpayment of UC benefits and non-fraud overpayments of FPUC and LWA benefits for weeks ending April 4, 2020 through February 6, 2021. Claimant filed Petitions for Review in this Court appealing from the UCBR's decisions, which were docketed at 1217 C.D. 2022, 1218 C.D. 2022, 1219 C.D. 2022, 1220 C.D. 2022, and 1221 C.D. 2022, respectively.

2

services as an independent contractor under his LLC.[4] On March 25, 2022, Claimant terminated the LLC.

Claimant filed an application for UC benefits, effective March 28, 2020, and subsequently became eligible for Pandemic Emergency UC (PEUC)/Extended Benefits (EB), effective March 14, 2021. Claimant filed for and received a total of $14,508.00 in UC benefits for claim weeks ending April 4, 2020 through February 6, 2021. Claimant received a total of $1,800.00 in FPUC for claim weeks ending April 4, 2020 through April 18, 2020. Claimant received a total of $300.00 in Lost Wages Assistance (LWA) for claim week ending August 29, 2020. Claimant received a total of $1,800.00 in FPUC benefits for claim weeks ending January 2, 2021 through February 6, 2021.

Claimant filed an application for UC benefits, effective March 28, 2021. Claimant received a total of $5,690.00 in UC benefits beginning with claim weeks ending April 3, 2021 through June 5, 2021. Claimant received a total of $3,000.00 in FPUC for claim weeks for that same period. Claimant filed for and received PEUC benefits in the amount of $1,144.00 for the claim week ending March 20, 2021 through March 27, 2021. Claimant received a total of $600.00 in FPUC benefits for that same period. Claimant filed for and received PEUC benefits in the amount of $2,288.00 for claim weeks ending February 20, 2021 through March 13, 2021. Claimant received a total of $1,200.00 in FPUC benefits for claim weeks ending February 20, 2021 through March 13, 2021.

On March 11, 2022, the Indiana UC Service Center issued 14 different disqualifying determinations finding Claimant ineligible for UC benefits under various sections of federal and Pennsylvania unemployment related law, including,

---

[4] The other contracts included: General Employment Enterprises in 2019; iWork Global USA, LLC in 2019; SAIM Inc. d/b/a Relax & Rejuvenate in 2019; Acara Solutions from June 2021 through July 2021; and Tax Force from August 2021 through December 2021.

3

*inter alia*, Sections 402(h) and 4(*l*)(2)(B) of the Law. Claimant appealed, and a Referee held a consolidated hearing on June 28, 2022. On July 5, 2022, the Referee affirmed the UC Service Center's determinations. Claimant appealed to the UCBR. On September 2, 2022, the UCBR affirmed and adopted all 14 Referee decisions. Claimant appealed to this Court.[5]

Claimant first argues that the UCBR's findings of fact related to whether Claimant was self-employed are not supported by substantial evidence. Specifically, Claimant contends that he was never free - for the entire period his LLC was in existence - from control or direction over the performance of his contracted services, and he was never customarily engaged in an independently established trade, occupation, profession, or business. Claimant asserts that the evidence he submitted supports the conclusion that he was not self-employed.

The law is well established:

> [I]n UC cases, the [UCBR's] findings of fact must be supported by "[s]ubstantial evidence [which] is defined as 'such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.'" *W[.] & S[.] Life Ins[.] Co. v. Unemployment Comp[.] [Bd.] of Rev[.]*, 913 A.2d 331, 335 (Pa. Cmwlth. 2006) (quoting *Guthrie v. Unemployment Comp[.] [Bd.] of Rev[.]*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999)). 'The [UCBR's] findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings.' *W[.] & S[.] Life Ins[.] Co.*, 913 A.2d at 335. This Court is bound 'to examine the testimony in the light most favorable to the party in whose favor the [UCBR] has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony' to determine if substantial evidence exists for the [UCBR's] findings. *U[.]S[.] Banknote Co. v.*

---

[5] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

*Unemployment Comp*[.] [*Bd.*] *of Rev*[.], . . . 575 A.2d 673, 674 ([Pa. Cmwlth.] 1990).  Moreover, '**even if there is contrary evidence of record**, **the [UCBR's] findings of fact are binding upon the Court where supported by substantial evidence**.'  *Borough of Coaldale v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], 745 A.2d 728, 731 (Pa. Cmwlth. 2000).

*Naborn v. Unemployment Comp. Bd. of Rev.*, 246 A.3d 373, 379-80 (Pa. Cmwlth. 2021) (emphasis added) (quoting *Cambria Cnty. Transit Auth. (Cam Tran) v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019)).

Here, Claimant asserts that the UCBR's findings of fact (FOF) 4, 6, 7, and 8 are not supported by substantial evidence.  The UCBR's FOF 4 states: "The expiry of the contract with Brenntag . . . precipitated [] Claimant's claim for UC benefits."  Certified Record (C.R.) at 1830.  Claimant testified:

> R Okay. . . .  **So what precipitated your application for [UC] benefits**?
>
> C I wasn't working.
>
> R **So**[,] **what separation from employment precipitated your claim for [UC] benefits**?  **So**[,] **from which [e]mployer were you separated [] that precipitated or caused you to then file a claim for [UC] [b]enefits**?
>
> C The date was March, right?
>
> R So you filed a . . .
>
> C March . . .
>
> R How did you file your claim for unemployment?  Let's start there.  Online, over a telephone, paper form?
>
> C I believe probably on the telephone.
>
> R On [the] telephone?  You spoke with a representative?
>
> C Yes.
>
> R To file your claim?

5

C Yeah.

R Okay. All right. And so this occurred on April 4, 2020, which would then make your claim effective on a Sunday, March 29, 2020. All right. **So what separation from employment occurred that led to your calling the [UC] -- the Service Center to file an [a]pplication for [UC] [benefits]?**

C **The Brenntag position** . . .

R Okay.

C . . . had come to an end on February 14th, and I -- by the time I filed like a month and a half later, I'm still unemployed, so I filed an application. I believe at the time, that was the very beginning of the pandemic and I had read that -- I had heard that the government was encouraging people to apply.

C.R. at 139-40 (emphasis added). Claimant's testimony is "such relevant evidence which a reasonable mind would accept as adequate to support [the] conclusion" that the expiration of Claimant's contract with Brenntag precipitated his claim for UC benefits. *Naborn*, 246 A.3d at 379 (quoting *W. & S. Life Ins. Co.*, 913 A.2d at 335). Accordingly, the UCBR's FOF 4 is supported by substantial evidence.

The UCBR's FOF 6 states: "Claimant received a[n Internal Revenue Service (IRS) Form] 1099 [(1099)] from Brenntag . . . for the 2020 tax year." C.R. at 1830. At the Referee hearing, Claimant related:

I've never considered myself to be self-employed. **I was issued a 1099 because the company Brenntag that I was working for** -- [] **required** -- [**it would**] **only issue me a 1099**. [Brenntag] called me up and said -- I worked for [Brenntag] previously as a W-2 employee, and . . . can [I] come in and work . . . as a 1099 contractor, and I was unemployed, so yeah, **I worked for [Brenntag] as a 1099 contractor**. But included in the evidence that I submitted, I previously worked for [Brenntag] in 2014 as a W-2 employee, that was like, I believe you said nine pages of timesheet entries.

6

C.R. at 140-141 (emphasis added); *see also* C.R. at 38. Claimant's testimony is "such relevant evidence which a reasonable mind would accept as adequate to support [the] conclusion" that Claimant received a 1099 from Brenntag for the 2020 tax year. *Naborn*, 246 A.3d at 379 (quoting *W. & S. Life Ins. Co.*, 913 A.2d at 335). Accordingly, the UCBR's FOF 6 is supported by substantial evidence.

The UCBR's FOF 7 states: "Claimant supplied all necessary tools to carry out the services." C.R. at 1830. In response to the Referee's question: "The equipment that you utilized to provide the services under your LLC, who provided that equipment?" Claimant answered: "I did. Mainly just a really fast laptop. Kind of an expensive laptop." C.R. at 145. Claimant's response is "such relevant evidence which a reasonable mind would accept as adequate to support [the] conclusion" that Claimant supplied all necessary tools to carry out the services. *Naborn*, 246 A.3d at 379 (quoting *W. & S. Life Ins. Co.*, 913 A.2d at 335). Accordingly, the UCBR's FOF 7 is supported by substantial evidence.

The UCBR's FOF 8 states:

Before and after Brenntag . . . , [] Claimant acquired other contracts for services as an independent contractor with other companies under his . . . LLC, such as:

- General Employment Enterprises in 2019,
- iWork Global USA, LLC in 2019,
- SAIM Inc. [d/b/a] "Relax & Rejuvenate" in 2019,
- "Acara Solutions" from June 2021 through July 2021, and
- "Tax Force" from August 2021through December 2021

C.R. at 1830.

Claimant testified:

R Okay, and prior to becoming employed with Judge Group, where did you work?

C **I worked for a company called Tax Force**.

R Okay, and do you recall when you were employed with Tax Force?

7

C Approximately **August 23rd through** . . .

R Of what year?

C Of 2021.

R Okay.

C **Through December 7th of** . . .

R The same year?

C **2021**, yes.

. . . .

R Okay.  Prior to Tax Force where did you work?

C **I worked for a company called Acara**.

R Acara?

C A-C-A-R-A.

R Okay.

C **Acara Solutions**.

R Okay, and approximately, do you recall when you worked for Acara?

C Approximately **June 7th of 2021 through July 20th of 2021**.

. . . .

R Okay.  Prior to Acara Solutions, where did you work?

C **I think it was called APR Resources**.

. . . .

R When did you first begin working for APR?

C Approximately April 20th of 2020 through August 14th of 2020.

. . . .

R And where did you work prior to APR?

C **Brenntag** . . . .

R I'm sorry, Brent?

C I'll spell it, B-R-E-N-N-T-A-G.

R Oh, Brenntag.  I'm sorry.

. . . .

R Okay.  When did you first begin working for Brenntag?

8

C January 15th of 2020.

R When did you last work for Brenntag?

C February 14th, 2020.

C.R. at 136-38 (emphasis added).

In addition, the Referee entered the following documents into the record.

> R Okay. Thank you. One page long. UC Exhibit 93 is a W-2 -- strike that, **a 1099 for [] Claimant for the tax year 2019 for [i]Work Global USA, LLC**. UC Exhibit 94 is **a 1099 for [] Claimant for the tax year 2019 for General Employment Enterprises**. UC Exhibit 95 is **a 1099 for [] Claimant for tax year 2019 for [e]mployer Relax and Rejuvenate**, otherwise known as Sam (phonetic), Saima, it's S-A-I-M-A. The name is cut off of it. Doing business as Relax and Rejuvenate.
>
> . . . .
>
> [Claimant], do you have any objection to these documents that I've identified being entered onto [sic] the record as evidence?
>
> C No.

C.R. at 125-26 (emphasis added); *see also* C.R. at 28-30. The above-quoted testimony and documentary evidence is "such relevant evidence which a reasonable mind would accept as adequate to support [the] conclusion" that Claimant acquired other contracts for services as an independent contractor with other companies under his LLC before and after Brenntag. *Naborn*, 246 A.3d at 379 (quoting *W. & S. Life Ins. Co.*, 913 A.2d at 335). Accordingly, the UCBR's FOF 8 is supported by substantial evidence.

Examining the testimony in the light most favorable to the Department of Labor and Industry (Department), and giving the Department the benefit of all inferences that can logically and reasonably be drawn from the testimony, as this

9

Court must, *see Naborn*, this Court holds that substantial evidence exists to support the UCBR's conclusion that Claimant was self-employed.

Claimant next argues that the UCBR's reasoning, including its reliance on *Starinieri*, is incorrect in light of the full evidentiary record and recent case law, including *Lowman*. This Court recognizes that the UCBR improperly relied upon *Starinieri*. Specifically, the UCBR stated:

> In *Starinieri . . . , . . .*, [our] Supreme Court held that the statutory language of Section 402(h) [of the Law] rendered a self-employed person who becomes an "unemployed businessman" ineligible for [UC] benefits. In determining self-employment status, [our] Supreme Court has established the following two-prong inquiry: (1) an examination of the claimant's stock ownership; and (2) an examination of the claimant's position in the corporation to determine whether the claimant exercises a substantial degree of control over the corporation's operation.
>
> An "unemployed businessmen" is ineligible to receive, [UC] [benefits] under Section 402(h) of the Law. The reasoning behind a denial of benefits in this instance is that the . . . Law was not enacted to compensate individuals who fail in their business ventures and become unemployed businessmen. The test in such a situation is whether the employee exercises a substantial degree of control over, the corporation. If the person did exercise such control over the corporation, then he is a businessman and not an employee, and consequently, ineligible to receive [UC] [benefits] under Section 402(h) of the Law. Factors to be considered in determining whether an employee exercised substantial control include position held, ownership, and degree of control over the day-to-day activities of the corporation.

C.R. at 1831 (italics added).

However, the *Lowman* Court expressly held:

> In light of our holding that Section [4](*l*)(2)(B) [of the Law] provides the appropriate framework for determining whether an individual is self-employed, **we have rejected**

10

Lowman's argument **that we rely on *Starinieri* for a self-standing definition of self-employment**, i.e., **a "businessman" model**. The issue before this Court in *Starinieri* was whether a minority shareholder, director[,] or officer in a closely-held corporation was entitled to [UC] benefits when the corporation ceased doing business as a result of a voluntary petition for bankruptcy filed by the company. *Starinieri*, 289 A.2d at 726-27. **The issue in *Starinieri* was not whether the claimant** (Starinieri) **was self-employed but whether his termination from employment was a voluntary quit**, i.e., whether by virtue of the bankruptcy filing, he made the decision to end his employment, thereby making him ineligible for [UC] benefits. Although the *Starinieri* opinion is short on factual development, it is clear that the case arose from a claim for benefits for services performed for the bankrupt company. The nature of the dispute and the precedent relied on by the *Starinieri* Court establishes that the [C]ourt's focus on the question of the claimant's degree of control over the company's operation was to determine whether the claimant was in a position to direct the filing of the voluntary bankruptcy petition, which ended the company's ability to employ the claimant and precipitated the claim for benefits. *Id*. at 727 (The termination of [Starinieri's] **employment** with Delaware Valley was the result of a voluntary petition in bankruptcy . . .) (emphasis added).

*Lowman*, 235 A.3d at 298-99 (emphasis added; footnotes omitted).

Notwithstanding its reliance on *Starinieri*, the UCBR properly expounded:

Section 4(*1*)(2)(B) of the . . . Law states[,] in relevant part[,] as follows:

Services performed by an individual for wages shall be deemed to be employment subject to [the Law] unless and until it is shown to the satisfaction of the [D]epartment that - (a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession[,] or business.

11

[] Claimant testified that while he is the sole owner of [LLC] he only established the legal entity to apply for jobs as a tax [c]ontractor and not for the intention of providing those services to the general public. [] Claimant further testified that he did not consider himself free from control since he often had supervisors and managers. In addition, [] Claimant contended that he did not consider himself to be customarily engaged in an independently established trade.

The Referee finds, that the [c]ompetent evidence and credible testimony establishes that on January 15, 2019, [] Claimant became the sole owner of [LLC] until March 25, 2022[,] when he terminated the LLC. **The record supports the fact that [] Claimant has acquired multiple business opportunities as an independent contractor**, providing services as a [t]ax [c]ontractor/[c]onsultant, before and after his involvement with Brenntag . . . since January 15, 2019. The Referee finds that [] Claimant's separation from Brenntag . . . occurred because the contract was up and the services agreed upon had been rendered in accordance with their contract. While [] **Claimant** testified that he had individuals who would oversee his work, he **himself had direct control over his business and the day-to-day operations and he provided his own tools required to perform the services**.

While he[,] from time to time[,] would accept positions as a W-2 employee, the Referee finds that this was only when it proved more lucrative. While the Referee does not question [] Claimant's strategy of selecting employment or contracts as an independent contractor or a W-2 employee based on their greater monetary benefits, the Referee finds that **the totality of circumstances and evidence demonstrates that [] Claimant was indeed self-employed** and therefore, ineligible for benefits under Sections 402(h), [and] 4(*l*)(2)(B) of the . . . Law for claim effective March 29, 2020.

C.R. at 1831-32 (emphasis added).

In *Lowman*, the Pennsylvania Supreme Court determined that Lowman was not free from control. Specifically, the *Lowman* Court concluded:

> Uber controlled and directed Lowman's performance of driving-for-hire services. Uber, presenting itself as a transportation network company, invites a passenger without any personal contact with anyone, to request a ride from a driver (who will be a stranger). Vetting, monitoring[,] and supervising the provision of services by its drivers is implicit in Uber's services. Giving weight to all of the evidence, we conclude that Uber controlled and directed the performance of Lowman's services as a driver-for-hire.

*Id*. at 305-06. In contrast, here, Claimant controlled and directed his services as a tax contractor/consultant. In particular, Claimant chose the companies with whom he contracted, he negotiated his rates,[6] and he performed his services on his own computer. While he may have received a W-2 on occasion, the majority of companies with which he contracted provided 1099s. Given the fact that Claimant used his own computer, that he most commonly received 1099s, that he chose the companies with which to contract, and that he signed an independent contractor agreement with each company, this Court concludes that Claimant was free from control or direction over the performance of such services both under his contract of service and in fact.

The *Lowman* Court further found that although Lowman was *customarily engaged*, his activities did not constitute an *independently established* business. The *Lowman* Court noted:

> Lowman had no ability to set the rate for the services he provided; had no ability to develop a client relationship with the passengers he serviced using the Uber App; and pursuant to the Uber [a]greement, he could not subcontract his work and he could not provide driver-for-hire services unless Uber, by way of an algorithm, offered him an assignment. While we recognize the countervailing aspects of the relationship with Uber, in light of the totality

---

[6] *See* C.R. at 166.

13

> of the circumstances, Lowman was not engaged in an independently established business.

*Lowman*, 235 A.3d at 307 n.32. Contrarily, here, Claimant had the ability to choose the companies with which he contracted, the number of companies with whom he contracted, and his rate of pay. Given that Claimant created LLC, had his own liability insurance,[7] was hired as an independent contractor, selected the number of companies with whom he contracted, and negotiated his rates, it is clear to this Court that Claimant was customarily engaged in an independently established business.

For all of the above reasons, the UCBR properly concluded that Claimant was self-employed. Accordingly, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[7] *See* C.R. at 144.

14

Kenny Hope,                            :
                    Petitioner        :
                                       :
            v.                         :
                                       :
Unemployment Compensation              :
Board of Review,                       :      Nos. 1208-1221 C.D. 2022
                    Respondent         :

## O R D E R

AND NOW, this 16th day of January, 2024, the Unemployment Compensation Board of Review's September 2, 2022 orders are affirmed.


_____
ANNE E. COVEY, Judge