# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Brenda Saunders, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1045 C.D. 2015 |
| | : | |
| Unemployment Compensation | : | Submitted: October 30, 2015 |
| Board of Review, | : | |
| | : | |
| Respondent | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE MARY HANNAH LEAVITT, Judge[1]
HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                    **FILED:  February 24, 2016**

Brenda Saunders (Claimant), pro se, petitions for review of the Order of the Unemployment Compensation (UC) Board of Review that affirmed the UC Referee's (Referee) Decision finding Claimant ineligible for UC benefits pursuant to Section 402(e) of the UC Law[2] (Law) because she engaged in willful

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e) (providing, in relevant part, that an employee is ineligible for UC benefits for any week the employee's "unemployment is due to h[er] discharge or temporary suspension from work for willful misconduct connected with h[er] work").

misconduct related to her work. On appeal, Claimant argues that the Board erred in finding her ineligible because the witnesses for Discount Insurance d/b/a Metro PCS (Employer) lied at the hearing, she was discharged for an improper reason, and the Referee did not consider all of the reasons Employer proffered for Claimant's discharge. Discerning no error, we affirm.

Claimant worked part-time for Employer as a security guard until December 26, 2014, when she was discharged. (Referee Decision, Findings of Fact (FOF) ¶¶ 1, 10.) Claimant filed an application for UC benefits, which the Local Service Center denied. Claimant appealed, and the matter was assigned to the Referee for a hearing. Employer presented documentary evidence and the testimony of its owner (Owner) and manager (Manager). Claimant testified on her own behalf.

Owner testified that Claimant was scheduled to work from 9:30 a.m. to 4:00 p.m. on December 23, 2014 and December 26, 2014. On December 23, Owner received a text message from Claimant stating that she had to leave early, and there was no other security guard present to cover the rest of Claimant's shift. It is important that a security guard be present because Employer has had robbery issues and, if a security guard is not present, the store's doors must be locked until Owner can get there. Employer offered a copy of the text exchange between Claimant and Owner. Employer previously submitted a copy of Employer's Policy & Procedure Agreement (Policy) for security guards, signed by Claimant, with its separation information, which Owner described.[3] Owner stated that Claimant did not show up to her scheduled shift on December 26 and did not call off. According

---

[3] The Policy provides that leaving a store unattended "can lead to termination" and that Employer "has zero tolerance for lateness and no shows. . . . If you do not come to work and do not call (or call after the beginning of your shift), you will be terminated." (Policy at 1, Service Center Ex. 22.)

2

to Owner, an employee who needs to leave early or not come to work must call her, not send a text, so that she can make an effort to get someone to cover. Owner said that an employee, particularly a security guard, could be discharged for walking off the job and for no call, no show. Owner indicated that she sent Claimant a letter on January 2, 2015 (Discharge Letter) outlining sixteen reasons for Claimant's discharge, including failure to report to work and abandoning her post. (Hr'g Tr. at 8-9, 12-16, 41, R. Item 11; Employer's Hearing Ex. E-1; Policy, Service Center Ex. 22; Discharge Letter, Service Center Ex. 10.)

Manager testified that she worked with Claimant on December 23, Claimant did not inform Manager of feeling ill, and Claimant left before the end of her shift without telling Manager. Manager stated that Claimant was scheduled to work from 9:30 a.m. to 4:00 p.m. on December 26, and she did not receive a phone call from Claimant indicating that Claimant would not be coming to work. (Hr'g Tr. at 19-21.)

Claimant denied knowing that she could be terminated for leaving a store unattended, receiving any policies or procedures related to her position as a security guard for Employer, or receiving the Discharge Letter from Employer. Claimant asserted that she was scheduled to work until 2:00 p.m., not 4:00 p.m., on December 23 and that, although she called and texted Owner that she was leaving early, she ended up staying late until the next security guard arrived at 2:30 p.m. She did not remember if she told Employer that she ended up staying late on December 23. Claimant testified that she called Owner at around 7:00 a.m. on December 26 to inform Owner that she was not feeling well and would not be at work, and Owner said that was fine. According to Claimant, Owner called her later on December 26 and they had a verbal altercation and exchanged text

3

messages regarding a letter Claimant received involving an alleged sexual harassment complaint against Owner filed by another employee. Claimant believes she was discharged for reasons related to the alleged harassment incident. The Referee declined to look at any text messages not related to the December 23 and 26 incidents, but allowed Claimant's testimony regarding the verbal altercation. (Hr'g Tr. at 22-26, 29-31, 33, 35, 37-38, 40, 45-46.)

In rebuttal, Owner denied that she engaged in a verbal altercation and that it was Claimant that sent harassing text messages on December 26. She also testified that the security guard Claimant said replaced her on December 23 worked at a different store on that day. (Hr'g Tr. at 42-43.)

Crediting most of Employer's evidence,[4] the Referee made the following findings of fact:

1. The Claimant was employed part-time with Discount Insurance Metro PCS, as a Security Guard earning $7.25 per hour. The Claimant began employment in September 2013, and was last employed on December 26, 2014.

2. The Employer maintains a call out policy [with] which all staff must adhere, specifically: employees are to contact the Employer by phone if they are unable to come into work or need to leave early from work. Text messages are not permitted for call-outs.

3. If the employee must leave early, the Employer requests that the employee attempt to stay until the Employer is able to find a replacement for the employee for the day; if the employee is unable to stay, the employee is asked to lock the facility until the Owner arrives at the worksite.

---

[4] The Referee chose not to credit all sixteen reasons in the Discharge Letter as the reasons for Claimant's discharge, and focused instead on the events of December 23 and 26, 2014.

4. The Claimant was aware or should have been aware of the Employer's policies.

5. On December 23, 2014, the Claimant was scheduled to work from 9:30AM until 4:00PM.

6. Prior to the end of her shift, the Claimant sent a text message to the Owner, and advised the Owner that she was not feeling well and would be leaving in 15 minutes.

7. The Claimant left the worksite, and there was no Security Guard who relieved the Claimant.

8. The Claimant was scheduled to work on December 26, 2014, from 9:30AM until 4:00PM.

9. The Claimant did not appear, and did not contact the Employer.

10. On December 26, 2014, the Employer discharged the Claimant.

(FOF ¶¶ 1-10.) The Referee determined that Employer met its burden of proving willful misconduct because "Claimant's leaving the job early on December 23, 2014, and being no call/no show on December 26, 2014 is conduct that falls below the standards of behavior which an Employer can rightfully expect of its employees." (Referee Decision at 2.) The Referee did not credit Claimant's testimony that she did not leave early on December 23, but stayed late until the other security guard arrived, and called Owner on December 26 to call off work because she did not feel well. The Referee noted that the security guard Claimant asserted replaced her was not working at Claimant's location on that day. Similarly, the Referee did not credit Claimant's testimony regarding the alleged verbal altercation between Claimant and Owner on December 26 regarding the allegation of sexual harassment against Owner. Having rejected Claimant's

5

testimony, the Referee determined that Claimant did not have "good cause or justification for [her] violation of the Employer's policy." (Referee Decision at 3.)

Claimant appealed to the Board. After reviewing the record, the Board held that the Referee's Decision was proper under the Law. Accordingly, the Board adopted the Referee's findings and conclusions as its own, incorporated them into its Order, and affirmed the Referee's Decision. Claimant now petitions this Court for review.[5]

On appeal, Claimant argues that the Board erred because Owner and Manager lied at the hearing and "[t]he real re[a]son[] for [her] being fired was . . . because [she] would not lie for [Owner] when [Owner] sexually harassed [an]other employee." (Claimant's Br. at 9.) Claimant maintains that, after she called off on December 26, Claimant texted Owner to say that she was being asked to testify on behalf of the employee who Owner allegedly sexually harassed, and this is why she was fired. (Claimant's Br. at 9-10.) She further questions why the Referee did

---

[5] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." Johns v. Unemployment Compensation Board of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth.), petition for allowance of appeal denied, 97 A.3d 746 (Pa. 2014). "The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." Western and Southern Life Insurance Company v. Unemployment Compensation Board of Review, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006). Substantial evidence is "such relevant evidence which a reasonable mind would accept as adequate to support a conclusion." Id. This Court is bound "'to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony'" to determine if substantial evidence exists for the Board's findings. United States Banknote Company v. Unemployment Compensation Board of Review, 575 A.2d 673, 674 (Pa. Cmwlth. 1990) (quoting Taylor v. Unemployment Compensation Board of Review, 378 A.2d 829, 831 (Pa. 1977)).

not look at all the reasons listed in the Discharge Letter or let Claimant present evidence on those issues.

We first address Claimant's assertions that Owner and Manager lied at the hearing and that the real reason for her discharge was related to the alleged sexual harassment incident. Although we understand Claimant's frustration in not having her testimony credited, it is the Board, not this Court that "determines the credibility of witnesses and the weight to be assigned to the evidence." Tapco, Inc. v. Unemployment Compensation Board of Review, 650 A.2d 1106, 1108 (Pa. Cmwlth. 1994). Those determinations "are not subject to re-evaluation on judicial review." Peak v. Unemployment Compensation Board of Review, 501 A.2d 1383, 1388 (Pa. 1985) (internal quotation omitted). Here, the Board credited Owner's and Manager's testimony that Employer discharged Claimant for leaving work early without a replacement present and for being no call/no show, and we may not revisit these credibility determinations. Chapman v. Unemployment Compensation Board of Review, 20 A.3d 603, 610 (Pa. Cmwlth. 2011).

We next consider whether Claimant's conduct constituted willful misconduct that disqualified her from receiving UC benefits. Here, the Board found that Employer met its burden of proving that Claimant's leaving work early without a replacement present and for being no call/no show was willful misconduct based on the credited testimony of Owner and Manager and Employer's Policy.

Section 402(e) of the Law states that an employee is ineligible for UC benefits for any week where her discharge is "for willful misconduct connected with h[er] work. . . ." 43 P.S. § 802(e). This Court has defined willful misconduct, in relevant part, as "the deliberate violation of [an employer's] rules" or "the

7

disregard of standards of behavior which an employer can rightfully expect from his employee." Guthrie v. Unemployment Compensation Board of Review, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). Whether a claimant's conduct rose to the level of willful misconduct is a question of law reviewable by this Court. Docherty v. Unemployment Compensation Board of Review, 898 A.2d 1205, 1209 (Pa. Cmwlth. 2006). "If the employer alleges willful misconduct because the claimant violated a work rule, the employer must prove both the existence of the rule and its violation." Caterpillar, Inc. v. Unemployment Compensation Board of Review, 703 A.2d 452, 456 (Pa. 1997). A claimant must also be "made aware of the existence of the work rule." Bruce v. Unemployment Compensation Board of Review, 2 A.3d 667, 671 (Pa. Cmwlth. 2010).

Here, Employer's Policy provides that leaving a store unattended "can lead to termination" and that Employer "has zero tolerance for lateness and no shows. . . . If you do not come to work and do not call (or call after the beginning of your shift), you will be terminated." (Policy at 1, Service Center Ex. 22.) The Policy Employer submitted by Employer bore Claimant's signature. Although Claimant asserted at the hearing it was not her signature, the Board did not credit that testimony. Moreover, even if Employer did not have a specific work rule on these issues, we have held that "a specific rule is not necessary where the standard of behavior is obvious and the employee's conduct is so inimical to the employer's interests that discharge is a natural result." Orend v. Unemployment Compensation Board of Review, 821 A.2d 659, 663 (Pa. Cmwlth. 2003). "An employer has the right to expect that [its] employees will attend work when they are scheduled, that they will be on time and that they will not leave work early without permission." Fritz v. Unemployment Compensation Board of Review, 446

8

A.2d 330, 333 (Pa. Cmwlth. 1982). Accordingly, Employer's credited evidence supports the Board's findings and determination that Claimant committed willful misconduct by leaving her post early without a replacement and being no call/no show.

If the employer satisfies its burden, the burden shifts to the claimant to show that he or she had good cause for the conduct. McKeesport Hospital v. Unemployment Compensation Board of Review, 625 A.2d 112, 114 (Pa. Cmwlth. 1993). "A claimant has good cause if his or her actions are justifiable and reasonable under the circumstances." Docherty, 898 A.2d at 1208-09. If a claimant had "good cause for the conduct, it was not willful misconduct." Rossi v. Unemployment Compensation Board of Review, 676 A.2d 194, 198 (Pa. 1996). Other than directly disputing Employer's credited evidence with her own version of what occurred and why she was fired, Claimant does not offer any justification for her actions. Thus, we conclude that Claimant did not establish good cause for her conduct.

Finally, we review Claimant's challenge to the Referee's decision not to consider all of the reasons Employer included in the Discharge Letter and not to allow Claimant to present evidence on those issues. The Discharge Letter outlines numerous reasons for Claimant's discharge, including failing to report to work and abandoning her store before another security guard arrived. The Referee and Board chose to focus on the immediate incidents that occurred on December 23 and 26 as the reasons for Claimant's discharge and found that they constituted willful misconduct. When a claimant has been discharged for multiple reasons, the claimant is ineligible for benefits if at least one of those reasons is willful misconduct. Glenn v. Unemployment Compensation Board of Review, 928 A.2d

9

1169, 1172 (Pa. Cmwlth. 2007). We see no error in the decision to not consider or credit the non-immediate reasons offered by Employer to support Claimant's discharge where those relied upon support the determination that Claimant was ineligible for UC benefits.

For these reasons, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brenda Saunders,              :
                                  :

            Petitioner    :
                                  :

           v.              :    No. 1045 C.D. 2015
                                  :

Unemployment Compensation  :
Board of Review,              :
                                  :

            Respondent  :

## O R D E R

**NOW**, February 24, 2016, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER, Judge**