IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wayne Milton Shoenfelt, : 
               Petitioner : 
                : 
                : 
         v. : 
                : 
Unemployment Compensation : 
Board of Review, :   No. 1143 C.D. 2020
               Respondent :   Submitted: April 23, 2021


BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                       FILED:  May 25, 2021

      Wayne Milton Shoenfelt (Claimant) petitions this Court, pro se, for review of the Unemployment Compensation (UC) Board of Review's (UCBR) October 6, 2020 order affirming the Referee's decision denying Claimant UC benefits under Section 402(b) of the UC Law (Law).[1] Essentially, there are two issues before this Court: (1) whether Claimant voluntarily left his employment without a necessitous and compelling reason; and (2) whether Claimant had a full and fair hearing. After review, this Court affirms.

      FBF Transport LLC (Employer) employed Claimant as a full-time truck driver from March 11, 2019 until February 27, 2020. Employer's trucks have a global positioning system (GPS) installed, which alerts Employer of any safety concerns. Employer had multiple conversations with Claimant regarding safety

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b) (relating to voluntary separation without cause of a necessitous and compelling nature).

alerts it received due to Claimant's speeding. Thereafter, Employer began routing all GPS safety alerts directly to Claimant's personal cell phone. Claimant became upset about the safety alerts on his phone, and requested that Employer discontinue them. On February 27, 2020, after being informed that Employer would not stop the alerts, Claimant quit, effective immediately.

Claimant applied for UC benefits on April 12, 2020.[2] On June 22, 2020, the Altoona UC Service Center determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law.[3] Claimant appealed, and a Referee hearing was held on August 11, 2020. On August 13, 2020, the Referee affirmed the UC Service Center's determination that Claimant was ineligible for UC benefits, but under Section 402(b) of the Law. Claimant appealed to the UCBR. On October 6, 2020, the UCBR adopted the Referee's findings and conclusions, and affirmed the Referee's decision. Claimant appealed to this Court.[4,5]

Initially,

[w]hether an employee has cause of a necessitous and compelling nature to quit employment is a legal conclusion subject to appellate review. In order to show necessitous and compelling cause, the claimant must establish that: 1) circumstances existed which produced real and substantial pressure to terminate employment; 2) like circumstances would compel a reasonable person to act in the same manner; 3) []he acted with ordinary common sense; and 4) []he made a reasonable effort to preserve [his] employment.

---

[2] Claimant worked for an intervening employer from March 23 to April 10, 2020, when he was laid off due to the Coronavirus pandemic.

[3] 43 P.S. § 802(e) (relating to discharge due to willful misconduct).

[4] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Rev*[.], 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Rev.*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

[5] Employer intervened in the appeal.

*Stugart v. Unemployment Comp. Bd. of Rev.*, 85 A.3d 606, 614 (Pa. Cmwlth. 2014) (emphasis omitted) (quoting *Comitalo v. Unemployment Comp. Bd. of Rev.*, 737 A.2d 342, 344 (Pa. Cmwlth. 1999) (citation and quotation marks omitted; emphasis added)).

This Court has explained:

[I]n UC cases, the [UCBR's] findings of fact must be supported by "[s]ubstantial evidence [which] is defined as 'such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.'" *W[.] & S[.] Life Ins[.] Co. v. Unemployment Comp[.] [Bd.] of Rev[.]*, 913 A.2d 331, 335 (Pa. Cmwlth. 2006) (quoting *Guthrie v. Unemployment Comp[.] [Bd.] of Rev[.]*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999)). 'The [UCBR's] findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings.' *W[.] & S[.] Life Ins[.] Co.*, 913 A.2d at 335. This Court is bound 'to examine the testimony in the light most favorable to the party in whose favor the [UCBR] has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony' to determine if substantial evidence exists for the [UCBR's] findings. *U[.]S[.] Banknote Co. v. Unemployment Comp[.] [Bd.] of Rev[.]*, . . . 575 A.2d 673, 674 ([Pa. Cmwlth.] 1990). Moreover, 'even if there is contrary evidence of record, the [UCBR's] findings of fact are binding upon the Court where supported by substantial evidence.' *Borough of Coaldale v. Unemployment Comp[.] [Bd.] of Rev[.]*, 745 A.2d 728, 731 (Pa. Cmwlth. 2000).

*Gosner v. Unemployment Comp. Bd. of Rev.*, 234 A.3d 934, 937 (Pa. Cmwlth. 2020) (emphasis omitted) (quoting *Cambria Cnty. Transit Auth. (Cam Tran) v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019)).

Here, Claimant quit his job because he was upset about speeding alerts being sent to his personal cell phone. Specifically, Claimant testified:

R[eferee:] So, on your last day of work, why did you drive the truck to your house and park it?

C[laimant:]  Because I was talking to George.[6]  George called me on the phone because, you know, another time [Employer's owner Andrew Fabin (]Andy[)] says that, you know, he couldn't talk.  But, I was talking to George and **I told George to have Andy take that off my phone and he said**, **I don't see that happening**.  **Then**, **I told George**, **well**, **I'm going home**.  **I quit**.  And, they were always making me, you know, they were changing the logbook, so I could get more hours.  And, there's just a bunch of reasons why I quit.

Certified Record (C.R.) at 166 (emphasis added).

Claimant further explained:

R[eferee:]  . . . [W]ho is George?

C[laimant:]  George is, to me, just somebody that works over in payments.  I don't know.  One day he's a truck driver.  The next day he's a mechanic.  Then [the] next day he's working on the foreman equipment over there.  I'm not really sure what George is.

R[eferee:]  So, you told him that you quit.  At any point did you contact the -- a member of management and tell them [sic] that you quit?

C[laimant:]  Well, I guess George is a part of management.

R[eferee:]  **What was the reason that you told George you were quitting**?

C[laimant:]  **Because of the cell phone**.  I wanted that off my personal cell phone because it was unsafe.  It would last -- if we was [sic] talking on the phone like this, it would just [sic] right across the phone.  It would block you out and I would have to listen to it for the next three to four minutes.  And, it was all the time.

*Id*. at 166-167 (emphasis added).

---

[6] There is no last name or title for George in the record.

4

Claimant expounded:

C[laimant:] . . . . And, I don't even know if it went off that day. I just wanted it off my phone. And, he would not take it off my phone.

R[eferee:] So, I'm now confused. If it didn't go off that [day], then **why did you quit**?

C[laimant:] Because pretty much what -- **why I quit was pretty much the way George said it**. When I said to George about Andy taking that off, **George said**, **on the phone he said**, **I don't see that happening**. And, I said, **well**, **if it's not going to happen**, I'm going home to clean the truck out. **I'm done**.

R[eferee:] Anything additional that you want to tell me?

C[laimant:] It was on there for -- I asked him almost every day to take that off my phone.

R[eferee:] You asked who?

C[laimant:] Andy. Well, the only thing you could do was text Andy. You would never get a response. It was -- I would never get a response. He wouldn't shut it off and that was for a good month.

R[eferee:] Anything additional?

C[laimant:] No, not that I can think of right now.

*Id*. at 168 (emphasis added).

The UCBR determined that Claimant was disqualified from receiving UC benefits under Section 402(b) of the Law, reasoning:

[C]laimant argues that it was illegal for [] [E]mployer to send safety alerts to his cell[ ]phone, but he does not cite any authority. [] [C]laimant argues that, contrary to Finding of Fact 3,[7] [] [E]mployer did not have multiple conversations with him about safety alerts for speeding. This argument is not persuasive because [] [E]mployer's

---

[7] Finding of Fact 3 provided: "[E]mployer had multiple conversations with [] [C]laimant regarding safety alerts for speeding." C.R. at 175.

5

owner testified that he did. [] [C]laimant argues that [] [E]mployer's witnesses were not credible. The [UCBR] resolves the conflicts in the testimony, in relevant part, in favor of [] [E]mployer and finds its testimony to be credible.

[] [C]laimant argues that although the UC Service Center determined that [] [E]mployer discharged him, the Referee improperly determined that he quit. This argument is not persuasive because the notice of hearing placed the parties on notice that both Section 402(e) (discharge) and Section 402(b) (quit) [of the Law] would be considered. Also, the Referee advised the parties that both [S]ections of the [] Law would be considered. Finally, [] [C]laimant has consistently maintained that he quit.

C.R. at 219. Based upon a review of the record, this Court holds that substantial evidence supports the UCBR's findings and conclusions. Accordingly, because Claimant quit his job without a necessitous and compelling reason, the UCBR properly concluded Claimant was ineligible for benefits under Section 402(b) of the Law.

Moreover,

[t]he purpose of UC is to protect against "the hazards of unemployment" by providing "compensation for loss of wages by employes during periods when they become unemployed through **no fault of their own**." [Section 4 of the Law,] 43 P.S. § 752 (emphasis added). Further, Section 402(b) of the Law provides, in relevant part, that a claimant shall be ineligible for benefits for any week "[i]n which his unemployment is due to **voluntarily leaving work** without cause of a necessitous and compelling nature . . . ." 43 P.S. § 802(b) (emphasis added). In this case, the UCBR found in Employer's favor. The record evidence supports the UCBR's findings.

6

*Small v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth. No. 1109 C.D. 2012, filed Jan. 9, 2013), slip op. at 3-4.[8]

Concerning whether Claimant had a full and fair hearing, the UCBR opined: "[C]laimant argues that the Referee did not consider the evidence that he submitted. He also argues that the Referee was not fair and impartial. The [UCBR] conduct[ed] an independent review of the record and finds the Referee's decision to be proper." C.R. at 219.

This Court has explained:

> A [r]eferee will be found to have denied a fair hearing to an unrepresented party where the [r]eferee failed to "advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of [the tribunal's] official duties." [Section 101.21(a) of the UCBR's Regulations,] 34 Pa. Code § 101.21(a). This includes assisting *pro se* claimants in developing the facts necessary for a decision.

*Procito v. Unemployment Comp. Bd. of Rev.*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008).

Here, the record reveals that Claimant received a notice of the hearing (Hearing Notice) and was advised of his rights. The Hearing Notice specified:

> SPECIFIC ISSUES to be considered in this appeal - See attached list of issues for additional information.
>
> # 17 - Section 402(e) - Whether [C]laimant's unemployment was due to discharge or temporary suspension from work for willful misconduct connected with employment.

---

[8] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent.

# 15 - Section 402(b) - Whether [C]laimant's unemployment was due to voluntarily leaving work without cause of necessitous and compelling nature.

C.R. at 138. Further, the Referee advised Claimant of his rights when the hearing commenced. In particular, the Referee instructed:

> R[eferee:] Thank you, all. I'd like to remind everybody of your rights. You have the right to present testimony and evidence and call and question witnesses. You also have the right to cross-examine any adverse witnesses. You also have the right to be represented by an attorney or a non-legal advisor. [Claimant], are you aware of your rights?
>
> C[laimant:] Yes.

*Id.* at 157. The Referee also described:

> R[eferee:] All documents will be entered as marked. I'll just briefly explain today's procedure. Although, there is some controversy, the [UC] Service Center ruled this an involuntary separation. So, I'm going to begin by asking [] Employer a few background questions regarding [] Claimant's employment and then, [] Employer will testify one witness at a time.
>
> After each witness testifies, [] Claimant will have the opportunity to cross-examine or ask questions regarding that testimony. Then, we'll switch in the reverse. [] Claimant will testify one witness at a time. And then, [] Employer [will] have an opportunity to cross-examine or ask questions regarding that testimony. I may ask questions of either party, at any time, just to clarify the record. After all testimony has been provided, today's hearing will be concluded. All parties will receive a [w]ritten [d]ecision in approximately one to two weeks. [Claimant], any questions?
>
> C[laimant:] No.
>
> . . . .
>
> R[eferee:] During the course of the hearing, if anybody has any questions, please let me know.

8

*Id.* at 159. Moreover, Claimant was afforded the opportunity to be heard throughout the proceeding. Claimant testified on his own behalf and the Referee questioned him regarding his employment separation.

At the end of the witness questioning, the Referee was about to conclude the hearing when Claimant interrupted and asked if the Referee had received his exhibits. *See id.* at 170. The Referee confirmed that she had, and asked Claimant what he wanted to say about it, since he was raising it for the first time at that point. *See id.* at 171. After determining that the exhibit related to a complaint Claimant filed with the Federal Motor Carrier Safety Administration (FMCSA)[9] *after* Claimant's separation from employment, *see id.* at 171, the Referee concluded the hearing. *See id.* at 172. Based upon a review of the record, this Court holds that Claimant received a full and fair hearing.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[9] The FMCSA is a United States (U.S.) Department of Transportation agency that regulates the U.S. trucking industry.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wayne Milton Shoenfelt,  :
               Petitioner  :
                               :
               v.  :
                               :
Unemployment Compensation  :
Board of Review,  :    No. 1143 C.D. 2020
               Respondent  :

## O R D E R

AND NOW, this 25th day of May, 2021, the Unemployment Compensation Board of Review's October 6, 2020 order is affirmed.

_____
ANNE E. COVEY, Judge